# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### MOORE v. FIDELITY TRUST CO. et al.*

(Circuit Court of Appeals, Third Circuit. June 1, 1905.)

#### No. 35.

FEDERAL COURTS—ACTION AGAINST EXECUTORS—ACCOUNTING—JURISDICTION.
Where the surviving partner of a firm was one of the executors of the estate of his deceased partner, the settlement of which was pending in the probate court of the state, which had full jurisdiction in equity to compel an accounting between the executors and by the surviving partner of his deceased partner's interest in the firm, a bill by a distributee under the will to compel an accounting by such surviving partner and a payment of the amount found due to the executors for distribution was a suit looking to the mere administration of the estate, and was not, therefore, maintainable in the federal courts.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 796, 1410; vol. 22, Cent. Dig. Executors and Administrators, § 2004.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 134 Fed. 489.

John M. Gardner and V. G. Robinson, for appellant.
H. Gordon McCouch, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. The bill of complaint, which the court below dismissed for lack of jurisdiction, was brought by Albert H. Moore, a citizen of New York, who is a son of Andrew M. Moore, deceased, and a distributee under his will, against the three executors named therein, citizens of Pennsylvania, to whom letters testamentary had been duly granted. One of these executors, Joseph F. Sinnott, was in partnership with Andrew M. Moore down to the time of his death, in the wholesale liquor business. The bill alleged that among the partnership assets of this firm of Moore & Sinnott were certain trade-marks, also the firm name of Moore & Sinnott, also the good will of said business, also the right of said Moore & Sinnott to sell liquors under the firm name and style of

*For dissenting opinion, see 138 Fed. 1008.

"Moore & Sinnott, Successors to John Gibson's Son & Co." It further alleged that these assets were of very great value, and had "never been appraised nor inventoried by the said Sinnott or the other defendants herein, and in no manner or way accounted for by the said Sinnott at any time, and that the affairs of said partnership have not been wound up nor accounting had with said Sinnott, surviving partner, and the executors and trustees of the estate of Andrew M. Moore." It further alleged "that the said defendant, Joseph F. Sinnott, has, since the death of said Moore, and is still, conducting and prosecuting the said business * * * under the name of 'Moore & Sinnott, Successors to John Gibson's Son & Co.,' and otherwise as 'Moore & Sinnott,' with the said trade-mark labels upon the bottles containing said liquors, and selling large quantities of said liquors with the designation of 'Gibson Whiskey,' and is now and has ever since the death of said deceased partner realized great profits in said business, * * * and has in no manner accounted for the same, or any part thereof, to the other executors and trustees, defendants herein." The last two and only remaining paragraphs of the bill, and its prayer for relief, are as follows:

"(8) Your orator further shows that the said Pennewill and Fidelity Trust Company, executors and trustees aforesaid, have neglected and failed to compel or require an accounting by the said surviving partner, Joseph F. Sinnott, of and concerning said rights, and the right and interest of the said estate in and to said trade-mark, good will, and firm name assets, although your orator has requested and demanded heretofore of them so to do.

"(9) That under and by virtue of the act of assembly of the commonwealth of Pennsylvania, May 11, 1901 (P. L. 174), the said Fidelity Trust Company and Walton Pennewill are empowered as executors to institute an action at law, bill in equity, or other appropriate legal or equitable proceeding on behalf of the said estate against said Sinnott to settle and determine the said questions and compel an accounting between said surviving members of said firm and the estate of said deceased partner, and, as your orator is informed and believes, the failure and neglect of the said Fidelity Trust Company and Walton Pennewill to take action and compel such accounting and to determine the value of said assets by appropriate proceedings for such purpose, in law or equity, and reducing to their possession the said assets, or the value thereof, belonging to said estate, for distribution to and among, or investment of the same for the benefit of, the beneficiaries and legatees mentioned in the said will of said deceased partner, inures greatly to their detriment and injury, and causes said beneficiaries and legatees, as well as said estate, a great injustice, to remedy which, and to compel the enforcement of the rights and secure the enjoyment of said estate, as well as the beneficiaries, including your orator, in and to said assets belonging to the estate of said deceased Andrew M. Moore, your orator brings this, his bill in equity.

"Wherefore, your orator prays judgment directing an accounting by and between the defendants Fidelity Trust Company and Walton Pennewill, as executors of the estate of Andrew M. Moore, deceased, and the defendant Joseph F. Sinnott, of and concerning the partnership affairs between said surviving partner and said estate, as and of the time of and from the death of said deceased to the date of said accounting, and, as incidental thereto, to determine what, if any, assets, property, or rights, including said firm name and the right to do business under said firm name as 'Successors to John Gibson's Son & Co.,' good will of said business, trade-marks owned and used by said firm, and other assets belonging to said firm of Moore & Sinnott, that have not been now and are undisposed of and that remain in common as the property of said firm, and that, in order thereto, a sale thereof and of the business of said firm be directed by a decree of this court, and the proceeds

arising therefrom be credited to the account of said firm for application and distribution according to the respective interests of said estate and the said Sinnott therein, and to the end that, on the coming in of the report of such sale, an accounting and settlement of the affairs of said firm may be had under the order of this court, and also that the purchaser at the sale, directed as aforesaid, acquire the exclusive right and use to the said firm name of Moore & Sinnott, as well as 'Moore & Sinnott, Successors to John Gibson's Son & Co.,' and the good will of the business of said firm and trade-marks aforesaid, and that the plaintiff have such other and further relief as may be just, with the costs and disbursements of this action."

In view of the prayer for "such other and further relief as may be just," we have considered, not only whether the court below had jurisdiction to award the special relief asked for, but also whether the case stated in the bill would justify any relief which a Circuit Court of the United States could properly grant. Story's Eq. Pl. §§ 41, 42. It appears, however, from the structure of the bill throughout, that the purpose for which it was framed is that which is thus stated at the close of its ninth paragraph: "To compel the enforcement of the rights and secure the enjoyment of said estate, as well as the beneficiaries, including your orator, in and to said assets belonging to the estate of said deceased Andrew M. Moore;" and, consequently, the position of the appellant necessarily is that the Circuit Court should have retained his bill, either for the recovery of certain assets on behalf of the estate of Andrew M. Moore, or for the purpose, at least, of compelling the co-executors of Sinnott to enforce its alleged rights in and to those assets. In our opinion, this position is untenable. It has been authoritatively decided that a federal court "has no original jurisdiction in respect to the administration of a deceased person," and cannot take any action or make any decree "looking to the mere administration of the estate." Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. Therefore, if a decree looking to the recovery of the assets in question, or ordering the Fidelity Company and Pennewill to institute proceedings for their recovery, would be a decree in respect to the administration of Andrew M. Moore's estate, it is clear that no relief agreeable to the frame of the bill could have been granted by the court below.

By the law of Pennsylvania, its orphans' courts are vested with exclusive jurisdiction in the administration of the estates of decedents, and that one of those courts had actually acquired jurisdiction of Andrew M. Moore's estate prior to the commencement of the present suit, the bill itself distinctly shows. "The jurisdiction of that court has attached to the assets; they are in gremio legis." Byers v. McAuley, supra; Van Dyke's Appeal, 60 Pa. 481. But it is said that:

"It is not sought by this action to administer the estate of the deceased; on the contrary, its primary object is to reach out for, and reduce to the possession of the representatives of the estate, for the purposes of administration by them in the proper forum, assets which, without the intervention of the equitable powers of this court, or those courts of the state possessing equitable power (under the Pennsylvania act of 1840), would not be acquired."

This statement, which we have taken from the brief of the appellant, assumes that a suit by a distributee to reduce to the pos-

session of the executors assets of a decedent's estate is not a suit "in respect to the administration of a deceased person," and that the particular assets here involved are recoverable only in a federal court, or in a court of Pennsylvania (other than the orphans' court) possessing equitable power. This assumption is erroneous throughout. It is the duty of executors, without suit by a distributee, to take possession of the assets of the estate committed to their charge. They are required to account for them in the orphans' court. For any refusal or omission to do so, they are there amenable, and it is peculiarly within the province of that court to see to it that nothing which they should take or demand shall be abandoned or relinquished. In other words, the administration of a decedent's estate includes the collection and recovery of its assets, and, in our opinion, there is nothing in the nature of the particular assets to which this bill relates, or in the facts which it states, to except the present case from the operation of this general rule. The appellant's hypothesis that the orphans' court cannot compel a settlement of the partnership account of Moore & Sinnott is a mistaken one. That court is a court of equity. It has jurisdiction of the assets belonging to the estate of Andrew M. Moore, and all parties in interest, including Sinnott, the surviving partner of the firm of Moore & Sinnott, are before it. The case is within its grasp, and "its power is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules. In such case it needs no other court to finish its work." Odd Fellows' Bank's Appeal, 123 Pa. 356, 16 Atl. 606. We have been referred to reported cases in which the Supreme Court of Pennsylvania has held that, where participation in the distribution of an estate is sought by one who claims that a balance is due him as surviving partner of the decedent, the orphans' court has no jurisdiction to settle the partnership account for the purpose of determining the validity or amount of his claim. But where, as in this case, it is charged that one of several executors, who is directly responsible to that tribunal, has failed to account for assets of the estate which are in his possession or control, the orphans' court has full power to effect a disclosure of such assets, and to this end may, where need be, settle a partnership account between the delinquent executor and his testator. Price's Estate, 81 Pa. 263; Unruh's Estate, 13 Phila. 337. In the last mentioned of these cases the court adopted the reasoning of the opinion in Leland v. Newton, 102 Mass. 350, in which it is said:

"Where one of two partners dies, * * * if the survivor himself becomes the personal representative of the deceased, he becomes bound, as executor or administrator, to render an account of his proceedings to the judge of probate. That account necessarily involves the settlement of the partnership affairs. There is no need of any other legal process, because all persons interested in the estate have an opportunity to be heard in respect to the settlement."

The Pennsylvania statute of June 16, 1836, § 19 (P. L. 792), provides that the jurisdiction of the orphans' court shall embrace "all cases * * * wherein executors may be possessed of or are in any way accountable for any real or personal estate of a decedent,"

and we need not assume to determine whether, if the liability to account which is here asserted exists, it extends to and includes all the executors, or attaches only to Sinnott. That question (if it arises) will be for decision by the orphans' court, whose authority to require an accounting, either by all or by any one of the executors, seems to be unquestionable (Bierly's Estate, *81 Pa. 419); but a federal court could not, without making a decree "looking to the mere administration of the estate," require any accounting at all.

The appellant says, in the brief he has filed in this court, that he "is not seeking * * * to compel the executors to sue," and it appears from the opinion of the court below that he did not there ask that it should retain his bill for the purpose of ordering any suit to be brought. But, waiving the point that a position not taken in the court of first instance cannot be insisted upon on appeal, we have considered the broad question whether, upon the case made by the bill, the Circuit Court had power to impose any direction whatever upon these executors, or upon any of them. It is obvious that no direction other than a decree that the coexecutors of Sinnott should compel him to account would have been pertinent or could have been efficacious, and this, as we have seen, the orphans' court may itself require him to do. The direction and control of executors and administrators in the performance of their duties is an essential attribute of its jurisdiction. Rhone on Orphans' Court Practice, vol. 3, §§ 144, 345. They are officers of that court (Byers v. McAuley, 149 U. S. 615, 13 Sup. Ct. 906, 37 L. Ed. 867), and should not be compelled to obey orders from two courts in respect to the administration of the same estate (Id., page 613 of 149 U. S., page 907 of 13 Sup. Ct. [37 L. Ed. 867]). This jurisdiction for direction and control was not taken from the orphans' court by the Pennsylvania act of 1901 (P. L. 174). That statute neither curtailed the powers of the orphans' court, nor enlarged those of any other court. It merely made it lawful for the "remaining executors" (as well as "assignees," etc.) to bring suit, on behalf of the estate, against any one or more of their number who might be indebted to it. This provision is permissive, not mandatory. The procedure it authorizes is not exclusive; and if, in the judgment of the orphans' court, it should be resorted to in this instance, it is for that court, in the exercise of its power of control, to direct the Fidelity Company and Pennewill to pursue it.

Our conclusion is that the appellant's bill did not, in any view which can be taken of it, present a case cognizable by the Circuit Court, and therefore the decree of that court, by which it was dismissed, is affirmed.